**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GEORGE F. EMIGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-1726 |
| | ) | Judge Nora Barry Fischer |
| SUSANNE STEFFEE, JEFFREY MILLER, | ) | |
| ALLISON JACOBS, JOSHUA GIRAN, | ) | |
| HARVEY COLE, LT. COL. JOHN BROWN, | ) | |
| LT. JAMES FULMER, DAVID REESE, and | ) | |
| LISA CHRISTIE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Plaintiff George Emigh ("Plaintiff") filed the instant civil action against Defendants Jeffrey Miller ("Miller"), Allison Jacobs ("Jacobs"), Joshua Giran ("Giran"), Harvey Cole ("Cole"), Lt. Col. John Brown ("Brown"), David Reese ("Reese"), and Lisa Christie ("Christie")(collectively, "PSP Defendants") and Lt. James Fulmer ("Fulmer") and Susanne Steffee ("Steffee") pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his First and Fourteenth Amendment rights. Specifically, Plaintiff alleges that he was retaliated against for filing a poor performance review of Allison Jacobs, for filing a Bureau of Professional Responsibility (BPR) complaint with the Internal Affairs Department of the Pennsylvania State Police (PSP) against Defendant Fulmer, and for filing grievances with his union. Plaintiff further alleges that his grievance was settled by the Pennsylvania State Trooper Association ("PSTA") attorney without his consent, he never received a fair hearing, and he was never reimbursed for the reduction of his suspension at settlement.

Pending before the Court are the PSP Defendants' motion to dismiss and motion to strike scandalous and impertinent material (Docket No. 9), Fulmer's motion to dismiss and joinder in co-defendants' motion to dismiss (Docket No. 12), and Steffee's motion to dismiss (Docket No. 14). For the following reasons, the Court will GRANT, in part, and DENY, in part, the PSP Defendants' motion, and will GRANT the motions of Fulmer and Steffee as to as to all of Plaintiff's claims.

## II.    FACTUAL BACKGROUND

Plaintiff was formerly employed as a Sergeant with the Pennsylvania State Police and stationed at the Indiana Barracks. (Docket No. 1 at ¶ 12).  Defendant Jacobs was also employed by the PSP, and Plaintiff was her direct supervisor. (*Id.* at ¶¶ 13, 14 ).  On June 6, 2006, Plaintiff completed a performance review for Jacobs, and designated five areas of her review as "Needs Improvement." (*Id.* at ¶ 15).  On June 8, 2006, Defendant Steffee, who serves as a Magisterial District Judge in Homer City, Pennsylvania, lodged a complaint against Plaintiff in which she alleged sexual misconduct that purportedly occurred during a private party the two attended in October of 2004. (*Id.* at ¶¶ 16, 19).  The report was made by Steffee to Defendant Fulmer, and Plaintiff alleges that it was also made in the presence of Jacobs, who was a friend of Steffee's. (*Id.* at ¶¶ 17, 18).

Thereafter, in the summer of 2006, Plaintiff was notified that a complaint had been made against him by Steffee. (*Id.* at ¶¶ 16, 19).  On or about August 30, 2006, Defendant Reese emailed Giran regarding the Steffee complaint.[1] (*Id.* at ¶ 22a). In response, Giran indicated that he saw no

---

[1]    Defendants Giran and Jacobs lived together "on and off" during this time.  (Docket No. 1 at 22a).

inappropriate behavior at the party in October of 2004. (*Id.*). When interviewed on October 6, 2006, Giran changed his report and alleged that Plaintiff participated in misconduct. (*Id.*). Plaintiff alleges that prior to Giran changing his account of what occurred, he and Reese spoke with Fulmer. (*Id.*).

On October 11, 2006, Plaintiff was interviewed by Defendant Reese after being administered his Miranda warnings. (*Id.* at ¶ 27). In the interview, Plaintiff was questioned about the Steffee incident and emphasized that there had never been any sexual contact between Steffee and him. (*Id.* at ¶ 28).

While the investigation into the Steffee incident was ongoing in October of 2006, Plaintiff received photocopies of two pages from a supervisor's notebook indicating that Fulmer was making derogatory remarks about Plaintiff and that Fulmer believed Plaintiff should be removed from his duties. (*Id.* at ¶ 22). After receiving this information, Plaintiff filed a BPR worksheet with PSP internal affairs complaining that the notes impeached Fulmer's credibility regarding the Steffee complaint. (*Id.* at ¶ 23). Plaintiff's complaint was investigated and adjudicated as "not sustained." (*Id.* at ¶ 24).

On December 18, 2006, Plaintiff was interviewed for a second time regarding the incident and about additional allegations made by Steffee, Jacobs, and Giran. (*Id.* at ¶ 30). That same day, the District Attorney declined to pursue prosecution against Plaintiff regarding the claims made by Steffee. (*Id.* at ¶ 29). Plaintiff claims that the District Attorney made this decision because the underlying allegations were not credible. (*Id.*).

Plaintiff was interviewed for a third time by Defendant Reese on January 17, 2007. At this interview, Plaintiff informed Reese that there was an error in his original statement; Plaintiff now

alleges that Reese never fixed this error. (*Id.* at ¶ 31). Thereafter, on March 7, 2007, Plaintiff was provided with a summary report of the investigation, which indicated that Plaintiff had grabbed Steffee on the buttocks as she had reported, and that Defendants Jacobs and Giran confirmed her story. (*Id.* at ¶ 32). On March 24, 2007, Plaintiff wrote a letter to Defendant Christie responding to the charges against him and indicated that his statement was never corrected. (*Id.* at ¶ 32). Plaintiff avers that the written statements and taped interviews of Jacobs and Giran do not indicate that Plaintiff grabbed Steffee's buttocks, but merely that he "grabbed and kissed her." (*Id.*).

On or about March 16, 2007, Plaintiff met with Defendant Cole and was advised that due to the statements provided by Jacobs and Giran about the Steffee incident, Cole had issued a Disciplinary Action Report against Plaintiff. (*Id.* at ¶ 33). At this meeting, Plaintiff alleges that Cole stated that Steffee "ha[d] a private agenda" against the Plaintiff, but would not elaborate on that agenda. (*Id.* at ¶ 34). Cole placed the Plaintiff on Restricted Status on or around May 23, 2007, and advised Plaintiff that he could choose to have his case determined by a Court Marshall or an arbitrator. (*Id.* at ¶ 35). Plaintiff signed a Member's Selection of Process to have his case heard by an arbitrator. (*Id.* at ¶ 36). Plaintiff requested the opportunity to submit to a polygraph examination, but this request was denied by Defendant Brown. Brown claimed that the accuracy of the polygraph would be questionable since plaintiff was "intoxicated at the time of the incident." (*Id.* at ¶ 37).

Defendant Christie issued a Notice of Disciplinary Penalty to Plaintiff on or about June 19, 2007, which included a thirty-five day suspension without pay and an inter-troop transfer. (*Id.* at ¶ 38). Plaintiff requested that the suspension start on July 13, 2007, which was the date that he intended to retire. (*Id.* at ¶ 39). Cole denied this request and the suspension commenced on June

25, 2007. (*Id.* at ¶ 40). On July 2, 2007, Plaintiff filed a grievance form to appeal his discipline. (Docket No. 9-2). On July 18, 2007, Plaintiff filed a second grievance pertaining to his discipline. (*Id.*).[2]

After serving the thirty-five day suspension, Plaintiff was transferred to the Belle Vernon Barracks as a Patrol Sergeant. (Docket No. 1 at ¶ 42). Plaintiff retired from the PSP on August 24, 2007. (*Id.* at ¶ 43). Plaintiff alleges that he advised his PSTA attorney that he did not want to settle his grievance. (*Id.* at 44). However, on December 7, 2007, Plaintiff was notified that the PSTA and the Commonwealth had agreed to reduce his suspension to fourteen days with the stipulation that the Commonwealth would pay any costs that Plaintiff incurred as a loss of benefits during the suspension. (*Id.*).

Plaintiff claims that he never received correspondence from the Commonwealth regarding reimbursement for costs and the other provisions of the settlement. (*Id.* at ¶ 45). Plaintiff also alleges that in retaliation for the filing of his grievances, Defendants Miller and Brown denied him an honorable discharge and did not permit him to purchase his service revolver and PSP hat upon retirement. (*Id.* at ¶ 50).

## III. PROCEDURAL HISTORY

On December 19, 2008, Plaintiff filed the instant complaint alleging violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (Docket No. 1). The PSP moved

---

[2]

On or around July 10, 2007, a second Disciplinary Action Report was issued against Plaintiff which alleged that he had conducted a biased investigation of a vehicle theft. However, Plaintiff was never disciplined for these allegations. (Docket No. 1 at ¶ 41).

to dismiss Plaintiff's Complaint and to strike scandalous and impertinent material from same on March 9, 2009. (Docket No. 9). Defendants Fulmer and Steffee similarly filed motions to dismiss on March 16, 2009. (Docket Nos. 12, 14). Plaintiff filed briefs in opposition to the instant motions on April 6, 2009. (Docket Nos. 17, 18). All Defendants filed reply briefs on April 16, 2009. (Docket Nos. 19, 20, 21). Accordingly, Defendants' motions are now ripe for disposition.

## IV.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although Federal Rule of Civil Procedure 8(a) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, it is not enough "to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the proscribed conduct." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)(quoting *Twombly*, 550 U.S. at 563 n.8)(internal quotation omitted). Moreover, factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." *Phillips*, 515 F.3d at 233.

In ruling on a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 233 (internal quotation and citation omitted). "Nonetheless, a court need not credit a plaintiff's bald assertions or legal conclusions when deciding a motion to dismiss." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007)(quoting *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)(internal quotation omitted)).

## V.     ANALYSIS

Plaintiff has brought claims pursuant to 42 U.S.C. § 1983, alleging that Defendants retaliated against him in violation of his First Amendment rights and denied him his Fourteenth Amendment right to due process. (Docket No. 1 at ¶ 1). To state a claim under 42 U.S.C. § 1983, a plaintiff must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

### A.     Plaintiff's First Amendment Claims

All Defendants assert that Plaintiff "did not engage in protected speech." (Docket No. 10 at 6; Docket No. 15 at 5). Particularly, Defendants claim that Plaintiff was not speaking in his capacity as a citizen when he made the statements at issue, and instead made said statements pursuant to his official duties on a matter of private concern. (Docket No. 10 at 7; Docket No. 15 at 6). In response, Plaintiff argues that he did not have a duty to report the misdeeds of Defendant Fulmer, and therefore his BPR complaint to internal affairs was protected speech. (Docket No. 17 at 11). Plaintiff further asserts that grievances are protected speech. (Docket No. 17 at 13).

The First Amendment to the United States Constitution safeguards the right to free speech. U.S. CONST. AMEND. I. To state a First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d

Cir. 2006).

### 1.    Protected Speech

Defendants challenge the sufficiency of Plaintiff's Complaint with regard to the first element of his First Amendment retaliation claim. Whether Plaintiff's speech was protected under the Free Speech Clause is solely a question of law. *Miller v. Clinton County,* 544 F.3d 542, 548 (3d Cir. 2008). A public employee's speech is protected when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)(quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

However, even if a public employee's speech is not protected by the Free Speech Clause of the First Amendment, it may be protected under the Petition Clause. "[A] public employee who has petitioned the government through a formal mechanism such as the filing of a lawsuit or grievance is protected under the Petition Clause from retaliation for that activity, even if the petition concerns a matter of solely private concern." *Foraker v. Chaffinch*, 501 F.3d 231, 236 (3d Cir. 2007). Petitioning the government qualifies as protected activity "so long as the petition was not frivolous, or a 'sham,' regardless of whether the petition involved a matter of public concern." *Hill*, 455 F.3d at 242, n. 24.

Thus, the Court will consider whether Plaintiff's activities are protected by either the Free Speech Clause or the Petition Clause of the First Amendment.

### a.    Plaintiff's Evaluation of Jacobs

In his complaint, Plaintiff asserts that Steffee made a complaint against him "in retaliation for the evaluation that he had given to her good friend Jacobs" (Docket No. 1 at ¶ 20), and that "Defendants Steffee, Jacobs, and Giran unlawfully agreed and acted together to deprive the plaintiff [of his First Amendment rights] as a result of defendant Jacobs' anger over the negative performance evaluation that she received from the plaintiff."  (Docket No. 1 at ¶ 46).  However, in his brief in opposition to the instant motions, Plaintiff now states that Jacobs' review is not the basis for his First Amendment claim.  (Docket No. 17 at 14).[3]    Accordingly, the Court acknowledges that the evaluation of Jacobs was not protected activity in that it was undertaken as part of Plaintiff's official duties and does not qualify as a petition to the government.

### b.    Plaintiff's BPR Complaint

Plaintiff alleges that his BPR complaint against Lt. Fulmer was protected speech. Recognizing that his speech is not protected under *Garcetti* if it was undertaken as part of his official duties, Plaintiff contends that he made his complaint as a citizen.  (Docket No. 17 at 11).  In his brief in opposition to the instant motions, he argues that a BPR complaint can be filed by any Pennsylvania citizen, not just PSP employees, and that there are no PSP regulations which classify his complaint as part of his official duties. (*Id.* at 11-12).  Defendants argue that Plaintiff's

---

[3]

The Court notes that Plaintiff was evaluating Jacobs as part of his official duties as her direct supervisor.  Moreover, Plaintiff was not filing this evaluation as a formal grievance or petition as contemplated by the Petition Clause.  Thus, the evaluation is not protected speech as it does not address a matter of public concern, nor does it constitute petitioning activity.  *See Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir. 2006); *Foraker v. Chaffinch*, 501 F.3d 231, 236 (3d Cir. 2007).

9

allegations indicate that his BPR complaint was made as a part of Plaintiff's official duties, and that it pertained to a matter of strictly personal interest. (Docket No. 10 at 8-14).

"A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter of political, social or other concern to the community." *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001)(quoting *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 884-85 (3d Cir. 1997))(internal quotations omitted). "Whether the speech can be fairly characterized as relating to any political, social or other concern of the community is determined by its content, form, and context." *Id.* (internal quotations omitted).

The Court finds that because the speech contained in Plaintiff's BPR worksheet[4] is of such a decidedly personal nature, it does not constitute a matter of public concern. Specifically, in his BPR worksheet, Plaintiff complained that Adamczyk's notes, composed six months before Steffee's complaint, raised issues as to Fulmer's credibility with regard to the complaint sheet he submitted about the Steffee incident, because the notes demonstrated Fulmer's animosity toward Plaintiff prior

---

[4]

Generally, in deciding a motion to dismiss the Court may not consider any material outside the pleadings. If the Court does consider material outside the pleadings, then Rule 12 (b) generally requires that the motion to dismiss be converted into a motion for summary judgment and that all parties be given a "reasonable opportunity to present material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). However, consideration of "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss" does not require that a motion to dismiss be converted into a motion for summary judgment "if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consolidated Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008). Plaintiff does not dispute the authenticity of the documents attached to PSP Defendants' motion. Therefore, the Court will consider said documents in analyzing the instant dispute.

to the alleged incident.[5] (Docket No. 1 at ¶ 23; Docket No. 9-2 at 2). The information contained in Plaintiff's BPR worksheet related solely to alleged misconduct in the handling an internal complaint filed against Plaintiff by Fulmer concerning the Steffee incident. *See Kline v. Valentic*, 283 Fed. Appx. 913, 916 (3d Cir. 2008)(where plaintiff filed a complaint about the handling of an internal PSP investigation of his alleged misconduct, plaintiff was not speaking as a citizen and the complaint was not protected speech). Plaintiff had a "highly personal interest" in lodging a complaint about Fulmer's alleged improper motive. *Id.* "It was *his* professional reputation that was at stake, and his actions in no way indicated that he wanted the public to know [about Fulmer's alleged misconduct]," all of which took place "during the course of an *internal* investigation." *Id.* (emphasis in original). Accordingly, with regard to the BPR complaint, Plaintiff has failed to allege sufficient facts to indicate that it constituted protected speech under *Pickering* and *Garcetti*.

The Court further finds that the BPR complaint is not protected speech under the Petition Clause. "[W]hen one files a 'petition' one is addressing government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair." *Foraker,* 501 F.3d at 236 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)). While the complaint made by Plaintiff was

---

[5]

Plaintiff asserts that discovery will show that Fulmer was part of a PSP cover-up over a murder investigation that was ongoing in Indiana County. (Docket No. 17 at 11). Plaintiff claims that he worked aggressively on the case and then was attacked by Fulmer, who was under pressure from forces within the PSP. Plaintiff also implicates Defendants Brown and Christie in this alleged cover-up. (*Id.*). Plaintiff devotes an entire paragraph to these allegations in his brief in opposition to the instant motions. (*Id.*). However, the PSP Defendants attached the BPR complaint to their motion as Exhibit 1, and that document does not contain any of these allegations. (Docket No. 9-2 at 2). Plaintiff does not question the authenticity of the BPR Complaint. As it makes no mention of these allegations, the Court will not address them in response to Plaintiff's argument that his BPR complaint constituted protected speech. (Docket No. 17 at 11).

a written filing to a governmental entity, the document indicates that Plaintiff did not request that the government take any action to remedy his complaint.[6] Therefore, it does not "constitute a petition for redress of grievances under the First Amendment." *Hannan v. City of Philadelphia*, 306 Fed. Appx. 735, 738 (3d Cir. 2009).

### c.    Plaintiff's Grievances

Plaintiff contends that the two grievances he filed through the PTSA on July 2, 2006 and July 18, 2006 constitute protected speech under the Petition Clause of the First Amendment.[7] (Docket No. 17 at 13).  The PSP Defendants have attached those grievances to their motion.  (Docket No. 9-2). The first and second grievances, signed by Plaintiff, pertain to discipline that was rendered after the processing of the Steffee complaint.  (*Id.*).  Plaintiff argues these grievances are protected speech as a matter of law.  (Docket No. 17 at 13).

This Court decided a similar issue in *Porter v. Intermediate Unit I,* 2007 WL 2597911 (W.D.Pa. September 5, 2007).  In *Porter*, the plaintiff filed multiple grievances with her local union against the defendants in the case. She alleged that "[i]n direct retaliation for [her] final grievance, the [Defendants] decided to further punish Porter by transferring her to a special education teaching position for which she was not trained or certified." *Id.* at *11 (internal citations omitted). Citing to the rationale of *San Filippo v. Bongiovanni,* 30 F.3d 424 (3d Cir. 1994), this Court found that the

---

[6]

In this way the BPR complaint differs significantly from Plaintiff's grievances filed through the PTSA, as the grievances set forth the specific remedies sought by Plaintiff.  (Docket No. 9-2 at 6-7).

[7]

 Although Plaintiff does not directly advance this argument, he relies on case law to this effect. (*Id.* at 15).

plaintiff had alleged sufficient facts that she had petitioned the government for redress of her grievances, and therefore stated a claim for First Amendment retaliation. *Id.*

In the instant case, Plaintiff filed two formal grievances through the PSTA. In the first grievance, he contests the basis for his discipline, i.e., that he engaged in unbecoming conduct during the Steffee incident. (Docket No. 9-2 at 6). In the second grievance, he claims his medical benefits were wrongfully suspended from July 15, 2007 to August 10, 2007. (*Id*. at 7). In both grievances, Plaintiff seeks specific remedies, including rescission of his suspension, lost wages, and reimbursement for the costs related to the maintenance of his medical costs. (*Id*. at 6-7). Thus, Plaintiff's grievances constitute petitioning activity. *See Foraker,* 501 F.3d at 236.

Plaintiff has also set forth sufficient facts to establish that his grievance was not frivolous. Plaintiff claims that when his grievance was settled, his suspension was reduced from thirty-five days to fourteen days. (Docket No. 1 at ¶ 44). Additionally, Plaintiff alleges that he applied for unemployment compensation during his suspension and that it was awarded to him because "the employer ha[d] not sustained its burden of proof and the benefits must be allowed." (*Id.* at ¶ 40). Finally, Plaintiff cites to the fact that the district attorney did not press charges against him because he found that the underlying allegations were not credible. (*Id.* at ¶ 29).

Accordingly, under the rationale of *San Filippo*, Plaintiff has properly alleged that he petitioned the government through a formal grievance procedure and has alleged facts from which this Court may infer that his grievance was not frivolous.[8]

---

[8]
To the extent Defendants argue that personal grievances dealing with Emigh's discipline cannot be viewed as implicating a matter of public concern (Docket No. 10 at 14-15), as previously

## 2. Retaliatory Action and Causation

In order to state a claim for First Amendment retaliation, a plaintiff must aver "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296. "Determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003)(quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Once a plaintiff has demonstrated that a defendant has engaged in such a retaliatory action, the plaintiff must then establish "a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Thus, viewing the facts set forth in the Plaintiff's complaint in a light most favorable to Plaintiff, the Court will assume, for the purposes of the instant motion, that the retaliatory conduct alleged by Plaintiff would "deter a person of ordinary firmness from exercising his constitutional rights." *Thomas*, 463 F.3d at 296.

At the outset, the Court notes that Plaintiff claims that the Commonwealth failed to contact him or reimburse him pursuant to his grievance settlement. (Docket No. 1 at ¶ 45). Plaintiff alleges that when his grievance was settled, a stipulation was included that the Commonwealth would pay any costs that the Plaintiff incurred as a loss of benefits during his suspension. (Docket No. 1 at ¶ 44). Plaintiff does not allege these claims against any of individual Defendants, but against the

---

discussed, this argument has no merit as it is unrelated to the Petition Clause analysis.

Commonwealth, which is not a party to this case.[9]  Similarly, Plaintiff also alleges that the second Disciplinary Action Report of July 10, 2007 was filed in retaliation for his grievance.  (*Id*. at ¶ 41).  However, Plaintiff fails to name any of the individual Defendants in this allegation.  Thus, as Plaintiff has not alleged that any of the Defendants played a role in these actions, Plaintiff has failed to state a claim against any of the Defendants on the basis of these actions.

The Court will now address the remaining alleged retaliatory actions as the relate to each Defendant, in turn.

### a.      Defendants Steffee, Giran, and Jacobs

Plaintiff contends that "Defendants Steffee, Jacobs, and Giran unlawfully agreed and acted together to deprive the plaintiff [of his First Amendment rights] as a result of defendant Jacobs' anger over the negative performance evaluation that she received from the plaintiff."  (Docket No. 1 at ¶ 46).  As previously discussed, Plaintiff's claims against Defendants Steffee, Giran, and Jacobs stem from their alleged retaliation against Plaintiff for his poor evaluation of Jacobs, which this Court has found is not protected activity (*See* Section V.A.1.a).  Thus, Plaintiff has failed to plead that these defendants retaliated against him for any protected activity.[10]  Accordingly, Plaintiff's First

[9]

To the extent that Plaintiff attempts to state a claim for a violation of his due process rights based on these allegations, the same issue arises, as the Commonwealth is not a named party in this case.

[10]

In his response to the pending motion, and despite the allegations set forth in his complaint, Plaintiff now asserts that the basis for his retaliation claim "was never the negative employee review on Jacobs which defendants contend was subject to *Garcetti*, but rather was the complicity of Jacobs and Giran with Cole and Fulmer, who, by unlawfully cooperating with Jacob's close friend Steffee to bring false charges, places this matter outside *Garcetti*, which does not apply." (Docket No. 17 at 14).  However, this explanation still fails to identify the protected activity for which  Steffee,

Amendment claims against Defendants Steffee,[11] Jacob, and Giran are dismissed, with prejudice.

### b.    Defendant Fulmer

Plaintiff contends Defendants Fulmer and Cole retaliated against him for filing a the BPR complaint against Fulmer.  (Docket No. 1 at ¶ 46; Docket No. 17 at 8).  While Plaintiff fails to specify the retaliatory action to which Fulmer was a party,[12] any alleged adverse employment action Fulmer took against Plaintiff could not have been in retaliation for Plaintiff's exercise of his First Amendment rights, because, as previously discussed, the BPR complaint does not constitute protected speech under either the Free Speech or Petition Clauses of the First Amendment. Accordingly, Plaintiff's First Amendment claims against Defendant Fulmer are dismissed, with prejudice.

### c.    Defendants Christie, Reese and Cole

Plaintiff alleges that Defendants Christie, Reese, and Cole retaliated against him in that: 1) Christie and Reese failed to correct statements contained within Plaintiff's statement to Reese, although Plaintiff put Reese on notice about the errors on January 17, 2007 (Docket No. 1 at ¶ 31);

---

Giran, and Jacobs allegedly retaliated against Plaintiff.  Thus, Plaintiff has failed to state a claim for which relief can be granted against Steffee, Giran and Jacobs.

[11]
Additionally, as Plaintiff alleges that Steffee made her complaint against him as a private citizen as a result of an incident that occurred at an off-duty party (Docket No. 17 at 14), Steffee was not a state actor for the purposes of § 1983 when she made her complaint. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005).

[12]
Instead, Plaintiff simply alleges that, "Defendant Cole and defendant Fulmer, upon information believed, also unlawfully planned and acted together to cause the Plaintiff harm...." (Docket No. 1 at ¶ 47).

2) Cole issued a Disciplinary Action Report (DAR) against Plaintiff on or about March 16, 2007 for his conduct related to the Steffee incident (*Id.* at ¶ 33); 3) Plaintiff was denied a change of suspension date by Cole in June of 2007 (*Id*. at ¶ 40); and 4) Plaintiff was issued a Notice of Discipline by Defendant Christie on or about June 19, 2007 informing him that he had been suspended for 35 days without pay with a post-suspension inter-troop transfer (*Id*. 1 at ¶ 38). Assuming, *arguendo*, that each of these actions is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights," *Thomas*, 463 F.3d at 296, Plaintiff has failed to plead causation with respect to these Defendants as each of the aforementioned actions took place before Plaintiff filed his grievances on July 2, 2007 and July 18, 2007. (Docket No. 9-2 at 6-7). Accordingly, Plaintiff's First Amendment claims against Defendants Christie, Reese, and Cole are dismissed with prejudice.

### d.      Defendants Miller and Brown

Plaintiff contends that upon his retirement on August 24, 2007, he was "denied an Honorable Discharge" and denied "his right to purchase his service revolver and receive his PSP hat" by Defendants Miller and Brown. (Docket No. 1 at ¶¶ 43, 50). While Defendants argue that Plaintiff has failed to plead causation because their alleged retaliatory acts took place prior to the filing of Plaintiff's grievances (Docket No. 10 at 14, n. 5), Plaintiff contends that Miller and Brown's actions were taken against him in August of 2007, *after* he filed his grievances in July of 2007. Thus, Plaintiff has sufficiently pled a cause of action for First Amendment retaliation in violation of §1983 against Defendants Miller and Brown.

### 3.    Qualified Immunity

Because Plaintiff's First Amendment claims against Defendants Miller and Brown have not been dismissed, the Court will address their alternative argument that they are entitled to qualified immunity. (Docket No. 10 at 15). A two-part test is utilized to determine whether an official is entitled to qualified immunity. *Saucier v. Katz,* 533 U.S. 194, 200-202 (2001). For the first factor, the Court must determine whether the official's conduct violated a constitutional right. *Id.* at 201. For the second factor, the Court must determine whether the constitutional right was clearly established at the time of the official's actions. *Id.* The factors of this test may be approached in any order, and if one factor is lacking, then qualified immunity has been established and the other factor need not be pursued. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).[13]

The Court has already determined that the facts alleged in the complaint state a claim for a violation of Plaintiff's constitutional rights with regard to his grievances. Therefore, Plaintiff's claims against the remaining Defendants meet the first factor of the *Saucier* test. As a result, the Court must address the second *Saucier* factor. The inquiry requires that, "the contours of the right...be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (internal citations omitted). As such, the doctrine of qualified immunity protects the official from liability if "[his] mistake as to what the law requires is reasonable." *Id.* at 205.

---

[13]

On January 21, 2009, the Supreme Court of the United States held that "[b]ecause the two-step *Saucier* procedure is often, but not always, advantageous, [district and circuit judges] are in the best position to determine the order of decision-making that will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 129 S.Ct. 808, 812 (2009).

In the instant case, there is no doubt that *San Filippo* stands for the proposition that the filing of a non-sham grievance through a governmental channel established for that particular purpose constitutes activity protected under the Petition Clause. *San Filippo*, 30 F.3d at 442. Furthermore, the district courts within this circuit have repeatedly held that the Petition Clause protects public employees who invoke formal union grievance procedures. *See, e.g.*, *Gallen-Ruiz v. City of Phila.*, Civ. A. No. 08-775, 2008 U.S. Dist. LEXIS 57357, *21 (E.D. Pa. July 21, 2008); *Lohman v. Duryea Borough,* Civ. A. No. 05-1423, 2007 U.S. Dist. LEXIS 87720, *33 (M.D. Pa. Nov. 29, 2007); *Porter v. Intermediate Unit I,* Civ. A. No. 06-1145, 2007 U.S. Dist. LEXIS 65427, *33 (W.D. Pa. Sept. 5, 2007); *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 468 (D.N.J. 2001). When Plaintiff filed his grievances, his superiors should have been aware that it was inappropriate to take adverse employment actions against him in retaliation for those protected filings. Therefore, the Court finds that Plaintiff's superiors could not have made a reasonable mistake as to the state of the law pertaining to this claim. Accordingly, the Court finds that Defendants Miller and Brown are not entitled to qualified immunity.

### B. Due Process

Plaintiff alleges that his procedural due process rights were violated by three actions: 1) his grievance was settled without his consent by his PTSA attorney; 2) Defendant Reese did not correct errors in Plaintiff's statements that appeared in his investigative report; and 3) Plaintiff was not given a polygraph test when he requested one.[14] "To state a claim under § 1983 for deprivation of

---

[14]

Plaintiff further claims that the Commonwealth failed to reimburse him pursuant to the settled grievance. (Docket No. 1 at ¶ 45). However, as previously discussed herein, the

procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v Borough of Kutztown*, 455 F.3d 225, 233-34 (3d. Cir. 2006)(*quoting Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

### 1. Grievance Settlement

Defendants argue that Plaintiff's allegations pertaining to his grievance being settled without his consent were directed at his union representative or attorney, neither of whom are named in this suit. (Docket No. 10 at 17). In his brief, Plaintiff does not address this argument, but instead solely focuses on his allegation against Defendant Reese and Christie. As the proper defendants for Plaintiff's claims related to his grievance settlement allegations would be the individuals who allegedly violated Plaintiff's rights, Plaintiff's claims regarding his grievance settlement cannot be maintained. *See Skrutski v. Marut,* 288 Fed. Appx. 803, 809 (3d Cir. 2008)(where the plaintiff claimed that the PSTA settled a grievance without his consent, plaintiff's action should have been directed at the union). Accordingly, Plaintiff's claims that his procedural due process rights were violated by Defendants because his grievance was settled without his consent are dismissed with prejudice.

### 2. Incorrect Statements and Polygraph Test

Defendants further argue that Plaintiff's claims against Reese, for failing to correct statements that Plaintiff alleges were false, and Brown, for failing to give Plaintiff a polygraph test,

Commonwealth is not a party to this action.

are insufficient to support a violation of Plaintiff's due process rights. Specifically, Defendants argue that the facts as set forth in Plaintiff's complaint affirmatively demonstrate that he was afforded procedures which satisfied due process. (Docket No. 10 at 19). Plaintiff counters that Reese's failure to correct misstatements in the investigatory record resulted in a denial of a fair hearing. (Docket No. 17 at 16). With regard to the polygraph test, Plaintiff fails to make a specific argument as to how Brown's refusal to allow him to take such as test violated his procedural due process rights.[15]

As the Supreme Court established in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), before a person with a protected property interest in his employment can be deprived of that interest, he must receive "notice and an opportunity for hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (internal quotation omitted). While a pre-deprivation hearing may be "something less" than a full evidentiary hearing, the employee must receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546; *see also Gniotek v. Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986)(the two "essential requirements" of due process are notice and an opportunity to respond). The purpose of a pre or post-deprivation hearing is to "determine 'whether there are reasonable grounds to believe the charges against the employee are true and support the proposed

---

[15] However, in his Complaint he alleges that he "requested an opportunity to submit to a polygraph examination, but this request was denied by [Brown], because Brown claimed that the accuracy of the polygraph would be questionable since the plaintiff was 'intoxicated at the time of the incident[.]'" (Docket No. 1 at ¶ 37). Plaintiff further contends that "[t]he PSP use the polygraph all the time and they base many decisions, particularly administrative decisions, on it." (*Id.*).

action.'" *Gilbert v. Homar*, 520 U.S. 924, 933 (1997)(quoting *Loudermill*, 470 U.S. at 545-46).

Plaintiff admits that on March 7, 2007, he was given a summary report of the charges against him. (Docket No. 1 at ¶ 32). On March 16, 2007, Plaintiff had a meeting with Defendant Cole wherein it was explained that due to the statements of Jacobs and Giran, a Disciplinary Action Report had been issued. (*Id.* at ¶ 33). Plaintiff responded to the charges against him on March 24, 2007, and indicated that there was an error in the taking of Plaintiff's statement by Reese. (*Id.* at ¶ 31). On May 23, 2007, Plaintiff was told that he had been placed on restricted status, but could choose to have his case heard by Court Marshall or Arbitrator. (*Id.* at ¶ 35). Plaintiff chose to have his case heard by an arbitrator. (*Id.* at ¶ 36). He claims that he then asked to be given a polygraph examination. (*Id.* at ¶ 37).

Plaintiff does not take issue with process by which the PSP undertook to give him his hearing, but instead claims that the hearing was not fair because his statement was not corrected by Reese. (Docket No. 17 at 16). However, Plaintiff admits that he had an opportunity to respond to the charges against him, including any statements extrapolated from his own statement, and did write a letter pointing out the error. (Docket No. 1 at ¶ 31). "A public employer may discharge its due process obligations by providing for facially adequate post-deprivation grievance procedures, even if the initial determination resulting in the deprivation was biased." *Skrutski,* 288 Fed. Appx. at 809 (citing *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995); *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983)). Furthermore, the Constitution provides no right to submit to a polygraph examination in the instance of an unfavorable employment action. Plaintiff is merely

22

entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546.

As Plaintiff's own complaint demonstrates that the notice given by the PSP to Plaintiff about the disciplinary action and the procedures available to Plaintiff afforded him adequate due process of law under *Loudermill*, Plaintiff has failed to state a procedural due process claim. Accordingly, Plaintiff's Fourteenth Amendment Procedural due process claims are dismissed with prejudice.

## VI.    CONCLUSION

Based on the foregoing, the PSP Defendants' Motion to Dismiss (Docket No. 9) is GRANTED, in part, and DENIED, in part. Plaintiff's Fourteenth Amendment procedural due process claims against the PSP Defendants are dismissed. Plaintiff's First Amendment retaliation claims, except for those specifically levied against Defendants Miller and Brown, are dismissed. As all claims against Defendant Jacobs have been dismissed in this case, the PSP Defendants' Motion to Strike Scandalous and Impertinent Material (Docket No. 9) is rendered moot. Defendant Steffee's Motion to Dismiss (Docket No. 14) and Defendant Fulmer's Motion to Dismiss (Docket No. 12) are GRANTED in all respects. Thus, Plaintiff may only proceed with his First Amendment claims against Defendants Miller and Brown for their alleged retaliatory conduct in denying Plaintiff an honorable discharge, his service revolver, and his PSP hat.

An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   May 27, 2009
cc/ecf: All Counsel of Record.